# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

March 30, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

ANGELA JOAN WAGNER,                     )
                                         )
    Plaintiff/Appellant,            )
                                         )
                                         )   Appeal No.
                                         )   M1999-01045-COA-R3-CV
VS.                                      )
                                         )   Rutherford Chancery
                                         )   No. 98DR-570
RODNEY KEITH WAGNER,                     )
                                         )
    Defendant/Appellee.             )

APPEALED FROM THE CHANCERY COURT
OF RUTHERFORD COUNTY
AT
MURFREESBORO, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, III, CHANCELLOR

JON S. JABLONSKI
2400 Crestmoor Road, Suite 315
Nashville, Tennessee 37215
    Attorney for Plaintiff/Appellant

FRANK M. FLY
P. O. Box 398
Murfreesboro, Tennessee 37133-0398
    Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

<u>O P I N I O N</u>

The trial court granted the parties a divorce, ordered joint custody of the parties' minor son, and divided the marital property. On appeal, Ms. Wagner contends that the trial court's award of joint custody on an alternating week basis was improper, that the division of marital property was inequitable, and that the trial court's order requiring her to bear one-half of the child's medical insurance was improper. We disagree and affirm the trial court's judgment.

I.

Rodney Wagner, an employee of Digital Equipment Corporation, and Angela Wagner were married in August of 1990. In October of 1990, after twelve and one-half years of employment with Digital Equipment Corporation, Mr. Wagner was offered a termination package consisting of back pay for accumulated "sick time," "vacation time," and salary based on length of employment. Mr. Wagner accepted the offer and subsequently started his own business, Lan Connects.

The parties' marriage produced one son, Christopher Taylor Wagner, who was born in 1993. The testimony in this case indicates that while the parties were married, Ms. Wagner was the primary caretaker of the child. Although Ms. Wagner testified that Mr. Wagner had no involvement in his son's life, other testimony indicated that Mr. Wagner's involvement in his son's life

was limited due to his efforts to start his own business. The child was diagnosed with attention deficit hyperactivity disorder.

The parties separated in 1998. At this time, the parties agreed to a temporary arrangement of joint custody on an alternating week basis. During this agreed joint custody arrangement, Mr. Wagner had the child put on medication for attention deficit hyperactivity disorder. The child's teachers testified that after the child began taking the medication they noticed an immediate difference in his behavior, attention span, and focus.

In May of 1998, Ms. Wagner filed a complaint for absolute divorce citing irreconcilable differences, inappropriate marital conduct, and cruel and inhuman treatment. Mr. Wagner answered the complaint denying these allegations and praying for dismissal of the complaint.

After a hearing, the trial court awarded Ms. Wagner a divorce on the grounds of inappropriate marital conduct. The parties were awarded joint custody of their son on an alternating week basis. Mr. Wagner was designated the primary custodial parent with full and sole responsibility for making non-emergency health care, school, and religious decisions concerning the child. Mr. Wagner was ordered to pay child support of $728.00 per month, a sum equal to 10.5% of his monthly income. The trial court further ordered that the parties be equally responsible for payment of the costs of medical insurance for the child.

The court awarded the marital home to Ms. Wagner and the parties' ownership of fifty percent of the stock in LanConnects to Mr. Wagner. The trial court designated as martial property $40,245 of Mr. Wagner's IRA account, $2,860 of Mr. Wagner's checking account with Nations Bank, $9,019 of Mr. Wagner's 401K account, $1,300 of Mr. Wagner's First American Checking Account, and $368 of Mr. Wagner's account with Educator's Credit Union. The court then awarded Ms. Wagner half of Mr. Wagner's IRA account and Mr. Wagner the rest of the marital property in the accounts. This appeal followed.

The issues Ms. Wagner has raised on appeal are (1) whether the trial judge erred in his custody determination; (2) whether the division of marital property was equitable; and (3) whether the trial court erred in ordering Ms. Wagner to bear one-half of the expense of the child's medical insurance.

## II. Custody Arrangement

Ms. Wagner contends in her brief on appeal that the trial court's award of joint custody on an alternating week basis was improper. In addition, Ms. Wagner argues that it was error for the trial court to grant Mr. Wagner the authority to make non-emergency health care, school, and religious decisions with regard to the child. We note that the proper standard of appellate review in child custody cases is de novo upon the record with a presumption of correctness of the trial court's findings. *See Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). By way of statute, courts have the authority to award child custody in a divorce proceeding "to either of the parties to the suit or to both parties in the

instance of joint custody or shared parenting, or to some suitable person, as the welfare and interest of the child or children may demand . . . ." Tenn. Code Ann. § 36-6-101(a)(Supp. 1999). This custody determination must be based first and foremost on the best interest of the child or children and can involve consideration of a multitude of factors that can affect the child's best interest. *See Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990); *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988); *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983). In addition, we must accord the determination of the trial court great deference on appeal because the trial court had the opportunity to observe the manner and demeanor of the witnesses at trial while our review is limited to the written record. *Jones v. Jones*, No. 01-A-01-9601-CV00038, Sumner County (Tenn. Ct. App. filed September 11, 1996, at Nashville) (citing *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47 (1959)).

This Court has previously adopted the doctrine of comparative fitness to determine the most suitable custodian for children of tender years. We stated

> Fitness for custodial responsibilities is largely a comparative matter. No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others . . . . To the extent the 'tender years' doctrine has continued efficacy it is simply one of many factors to be considered in determining custody, not an unyielding rule of law. The only rigid principle is and must be that the best interests of the child are paramount in any custody determination.

*Bah v. Bah*, 668 S.W.2d at 666 (citations omitted).

In the present case, the trial judge made detailed findings of fact regarding the issue of custody. The trial judge found that, although the bond between Ms. Wagner and the child was slightly greater than that between Mr. Wagner and the child, Mr. Wagner was more stable. The trial court based this finding on Ms. Wagner's history of impulsive actions and expenditures evidenced by the record. The trial court further noted that Ms. Wagner continues to suffer from psychological problems for which she takes medication on a daily basis. The trial court pointed out Ms. Wagner's confrontational and exclusive demeanor in court regarding issues of custody whereas Mr. Wagner appeared much more amenable to a continuation of an appropriate relationship with each parent. In addition, the trial court noted that continued joint custody was an appropriate permanent solution.

The trial court's award of decision making authority to Mr. Wagner was based on the court's determination that Mr. Wagner was better able to deal with others including school personnel, doctors, church associates, neighbors, and business associates. The trial court then noted that Ms. Wagner has little church association, a confrontational relationship with school personnel, and long "mad spells" where she stops interacting with others who take positions for which she does not care. These findings are supported by the record.

In light of the foregoing, it is the opinion of this court that it is in the best interest of the child that he be given the opportunity to maintain warm and close relationships with both parents in the form of joint custody. In addition,

the trial court's award of decision-making authority to Mr. Wagner was appropriate in light of the evidence in the record.

### III. Division of the Marital Property

Ms. Wagner next contends that trial court's division of marital property was not equitable. Specifically, Ms. Wagner argues that the trial court erroneously classified marital property as separate property. We disagree. Tenn. Code Ann. § 36-4-121 defines marital and separate property:

> (b)(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.
>
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.
> . . .
>
> (2) "Separate property" means:
> (A) All real and personal property owned by a spouse before marriage;
> (B) Property acquired in exchange for property acquired before the marriage;
> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and
> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

Tenn. Code Ann. § 36-4-121(b)(1)(A)-(B); (b)(2).

Ms. Wagner first takes issue with the trial court's classification of the majority of Mr. Wagner's termination package as separate property. Ms. Wagner asserts that the entire package was marital property and should have been divided equally. We note that the termination package consisted of salary for Mr. Wagner's accumulated sick time, vacation time, and length of employment. After receiving the money from this package, Mr. Wagner deposited the funds into an account with Merrill Lynch and then transferred the funds to an account with Educator's Credit Union. Mr. Wagner had worked for Digital Equipment Corporation for over twelve years prior to his marriage to Ms. Wagner. Mr. Wagner worked for Digital Equipment Corporation for only four months while he was married to Ms. Wagner. As such, the vast majority of Mr. Wagner's accumulated sick pay and vacation pay amassed prior to his marriage to Ms. Wagner.

The Tennessee Supreme Court has previously held that marital property includes retirement benefits, both vested and unvested, which accrue during the marriage. *Cohen v. Cohen*, 937 S.W.2d 823, 830 (Tenn. 1996). The Court further held that

> 1. Only the portion of retirement benefits accrued during the marriage are marital property subject to equitable division.
>
> 2. Retirement benefits accrued during the marriage are marital property subject to equitable division even though the non-employee spouse did not contribute to the increase in their value.
>
> 3. The value of retirement benefits must be determined at a date as near as possible to the date of the divorce.

*Id.* at 830. Although the Court was referring to retirement benefits, we find the reasoning and holding applicable in the case at bar as the package received by Mr. Wagner was analogous to a retirement benefit package.

In the present case, the termination package benefits accrued almost entirely before the parties were married. After the parties were married and Mr. Wagner received the package, Ms. Wagner did nothing to substantially contribute to its preservation or appreciation. Therefore, we cannot find that the trial court erred in finding that only $368.00 of the $25,368.00 in the Educator's Credit Union Account was marital property.

Ms. Wagner next contends that the trial court erred in finding that only $2,860.00 of Mr. Wagner's Nations Bank account was marital property. At the time the parties were married, Mr. Wagner had an account with First American with a balance of $13,477.00. After the marriage, Mr. Wagner took $12,000.00 from that account and opened another account with First American as "doing business as" Lan Connects account. After the parties separated, Mr. Wagner transferred this account to Nations Bank. When the account was opened at Nations Bank, it had a balance of $30,102.45. However, at the time of the divorce hearing, the account had a balance of only $16,337.00. The trial court correctly determined that $13,477.00 of this account was Mr. Wagner's separate property. *See* Tenn. Code Ann. § 36-4-121(b)(2)(A). In addition, we note that marital property must be "valued as of a date as near as reasonably possible to the final divorce hearing date." Tenn. Code Ann. § 36-4-121(b)(1)(A). Therefore, the trial court correctly utilized the value of the account as of the date

of the divorce hearing, $16,337.00, for purposes of determining the amount of marital property in the account. The trial court correctly determined that only $2,860.00 of the account was marital property and thus subject to equitable division.

## IV. Medical Insurance

Ms. Wagner next contends that the trial court erred in requiring her to bear one-half of the expense of the medical insurance for the child. We note initially that this Court has previously held that the Child Support Guidelines

> require the obligor parent to pay for the children's medical insurance in addition to whatever other child support might be required. The courts have little discretion with regard to this obligation and may only depart from the guideline's requirements if they make written, specific findings concerning why it would be unjust or inappropriate to require a particular obligor parent to pay for the children's medical insurance.

*Carden v. Carden*, No. 01-A-01-9502-CH00042, Coffee County (Tenn. Ct. App. filed November 22, 1995, at Nashville) (citing Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(a)). However, in the present case, the parties enjoy joint custody of the child and neither party falls within the definition of an "obligor" as set out in the guidelines. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(1). In fact, the guidelines state that they are "designed to apply to situations where children are living primarily with one parent . . . . In situations where overnight time is divided more equally between the parents, the courts will have to make a case-by-case determination . . . ." Tenn. Comp. R. & Regs. r. 1240-2-4-.02(6). In the case at bar, we find that the handling of the matter of health insurance for this minor child was within the discretion of the trial court. *See Dill v. Dill*, No.

-10-

02A01-9810-GS-00272, Hardin County (Tenn. Ct. App. filed August 2, 1999, at Jackson).  In light of the foregoing, the trial court did not abuse its discretion in ordering the parties to equally share the cost of the child's medical insurance.

The judgment of the court below is affirmed and the cause remanded to the Chancery Court of Rutherford County for any further proceedings necessary.  Tax the costs on appeal to the appellant, Angela Joan Wagner.

_____
_____ BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
PATRICIA J. COTTRELL, JUDGE